## SMITH *vs.* LEWIS.

A refusal of one of the parties, to a contract founded upon mutual and concurrent conditions, to perform his covenants, will excuse a want of entire and absolute preparation, by the other.

The party to such contract, seeking to recover for a breach, must, at least, show that he was "ready and willing" to perform his part of the agreement.

A voluntary absence of such party, from a place assigned for its performance, is tantamount to a refusal, and will excuse the other party from the performance of such acts, as the absence renders impossible, or nugatory, and tends directly to dissuade.

Such a refusal will excuse acts of mere formal preparation, as well as acts of strict performance, if the refusal is the direct and reasonable cause of their omission.

S. being under covenant obligations to exchange real estate with L., and to pay a sum of money on a given day, verbally arranged to meet L. at the residence of the latter, in another town, with an express view to preparing conveyances, and completing the exchange. S. repaired to the place appointed, at a reasonable hour on the day assigned, and found that L. had left the town at an early hour and under such circumstances, as to make it apparent that his absence was fraudulently designed to avoid performance. L. remained absent all day, and S., in consequence, took no steps towards removing certain incumbrances on his own real estate, and did not take his money into his manual possession from several places of deposit, nor prepare the title deeds to his property. Held, that S. was justified in discontinuing acts of preparation; that as he was "ready and willing" to perform, and as his want of complete formal preparation was in consequence of L.'s refusal, the latter could not take advantage of the omission, to defeat his right of recovery.

An executory contract, under seal, cannot be discharged, or released, by an executory verbal contract.

THIS was an action on a covenant in the following terms :

" Articles of Agreement made and concluded upon, this 17th day of January, A. D. 1852, between Gilson Lewis, of Suffield, in the county of Hartford, and state of Connecticut, of the one part and Israel Smith, of Windsor, in the county and state aforesaid, of the other part.

*First.*—The said Gilson Lewis, in consideration of one dollar, to him paid by the said Smith, (the receipt whereof

is hereby acknowledged,) and in further consideration of the promises of the said Smith, hereinafter contained, doth hereby, for himself, his heirs, executors, and administrators, and every of them, covenant, promise, and agree, to and with the said Israel Smith, his heirs, executors, and administrators, and every of them, by these presents, that he, the said Gilson Lewis, shall or will, on or before the first day of April next, after the date thereof, by such conveyances, assurances, ways and means in the law, as he, the said Smith, shall [reasonably require, well and sufficiently grant, sell, release, convey, and assure to the said Smith, and his heirs, or to whom he or they shall appoint or direct, all that certain tract or parcel of land lying and being situated in Suffield, aforesaid, containing an area of forty acres, more or less; with a tavern and dwelling house, barns, carriage-house and other buildings thereon standing, with covenants to be therein contained that the said premises, at the time of such conveyance, are free of all incumbrances and demands whatsoever, except a demand of one thousand dollars, secured by a mortgage on the said premises, given by the said Lewis to Mercy Spencer, dated the 16th day of July, 1834, as by reference to said mortgage deed will more fully appear, and all other usual and reasonable covenants.

*Second.*—In consideration whereof, the said Israel Smith, for himself, his heirs, executors, and administrators, doth hereby covenant, promise and agree, to and with the said Gilson Lewis, his heirs, executors, and administrators, by these presents, that he, the said Smith, shall or will, at the time of executing said conveyances, on or before the first day of April aforesaid, pay to the said Gilson Lewis the sum of two thousand dollars, and shall also, at the same time, by such conveyances, assurances, ways and means in the law, as he, the said Lewis, shall reasonably require, well and sufficiently grant, release, sell, and convey to the said Lewis and his heirs, or to whom he or they shall appoint or direct, all that certain tract or parcel of land, lying and being situated in

Windsor aforesaid, in the village of Windsor Locks, containing an area of one acre, more or less, with a dwelling house, tailor's shop, barn, and other buildings thereon standing, with covenants to be therein contained, that the said last mentioned premises, at the time of the said conveyance thereof, are free of all incumbrances whatsoever, and all the other usual and reasonable covenants.

*Third.* And it is further agreed by and between the said parties, in consideration as aforesaid, that at the time of said conveyances, the said Smith shall buy of the said Lewis, all of the household furniture and farming utensils now on the said first mentioned premises, except such few articles as the said Lewis may wish to reserve for his own use, and shall pay to the said Lewis therefor, a sum of two hundred and fifty dollars less than said personal property shall be then valued and appraised to be worth by two judicious and disinterested men, one of whom shall be selected by each of the parties, the two appraisers to choose an umpire in case of disagreement.

And for the true performance of all and every the covenants and agreements aforesaid, each of the parties to these presents doth hereby bind himself, his heirs, executors and administrators, to the other of them, his heirs, executors, administrators, and assigns, in the penal sum of one thousand dollars.

In witness whereof, the said parties to these presents have hereunto set their hands and seals, the day and year first above written.

GILSON LEWIS, [L. S.]
ISRAEL SMITH, [L. S.] "

The defendant pleaded the general issue, with notice of special matter to be given in evidence, upon which issue was joined to the court.

The cause was tried at the term of the superior court, holden at Hartford, in October, 1855, when the following

Smith *v.* Lewis.

facts were found by the court, and the case was reserved for the advice of this court.

On the trial, the due execution of the covenant was admitted.

The plaintiff proved, that on the Monday preceding the first day of April, 1852, it was arranged between the plaintiff and the defendant, that the writings which it should become necessary to make between them on the first of April, in the execution of the covenant, should be drafted by an attorney, and that they would meet, on that day, at the house of the defendant, and then go to the attorney's office, which was near by; that the plaintiff went to the defendant's house, about 9 or 10 o'clock in the forenoon of the first of April, with an appraiser, for the purpose of appraising the personal estate mentioned in the contract, and remained waiting there, an hour or more, when he returned to his place of residence, about four miles distant, and consulted with counsel as to what was necessary to be done in the absence of the defendant, and he went again, in the afternoon, to the defendant's house, and remained there until about sun set.

During that day the plaintiff also went to the attorney's office and found it shut, and during the day, he enquired for the defendant and made known to the defendant's family the business which brought him there, and declared his wish and readiness to complete the contract.

It was further proved, that the defendant left home early in the morning of the first of April, and continued absent during the whole day. The plaintiff claimed, that on said first of April he was ready and willing to fulfil the stipulations of the covenant, on his part to be performed; and the defence rested upon the denial of the plaintiff's claim in that respect, and there was no other defence in the case, except this, and a claim which was ultimately disposed of as a question of law, as hereinafter stated. Upon the question, whether the plaintiff was, or was not, ready to perform, so as to be

entitled to recover, the court found, that on said first of April, there were three mortgages upon the real estate which the plaintiff, by his covenant, was to convey to the defendant; one to Milton Hathaway, dated April 2, 1850, to secure a note for $700, on which was due, on the first of April, 1852, the principal and interest; one to Louisa Phelon, dated Dec. 3, 1851, to secure a note of $800, on which was due, on the first of April, 1852, the principal and interest; one to Lucius B. Chapman, dated March 27, 1852, to secure a note of $330, on which the full amount of the note was also due.

The plaintiff, in order to remove said incumbrances and to provide the money necessary to be paid to the defendant, had furnished himself with cash in hand, to the amount of something over $2000, and shortly prior to the first of April, had made arrangements with said Hathaway and Phelon to remove their mortgages, either by payment, or by transfer from the plaintiff's property to the property which he should receive from the defendant, if the covenants were carried into effect.    The plaintiff had also made an arrangement with a Mr. Corbin, to help him procure from $100 to $400, if he should want it on the first of April; and the plaintiff had also agreed with a Mr. Harmon, of Suffield, that he would let the plaintiff have $2000, on said first day of April, which latter sum was to be secured by a mortgage of the property which the plaintiff expected would be deeded to him by the defendant, under the covenant.   Said Harmon testified that " he should have had no hesitation to let the plaintiff have the $2000 on that day, all the other parties being present to make out the necessary papers, and that he knew the plaintiff must have a title to the place before he could give the witness security for the $2000, and that he should have paid the money over to the plaintiff before the plaintiff had got a deed for security, if it had been necessary, with the understanding that the plaintiff should give the witness security, as soon as he got a title of the Lewis place, with the understanding that the witness was to have security, by mortgage

on the Lewis place, first after the Mercy Spencer mortgage of $1000." Harmon also testified, " that he did not have the money in his hands, on the first day of April, but in all probability would have had it, if the plaintiff had called for it. The understanding was, that it should be ready on that day. He had no doubt but he could have raised the money for the plaintiff, on that day." There was also further proof tending to show that this $2000 would have been ready for Harmon, if he had wanted it for the plaintiff. Harmon lived about one and a half miles from the defendant's house, on the same road with Miss Phelon's residence, and was to get the money, about four miles from his own residence, and about the same distance from the defendant's place of abode. The persons, holding mortgages upon the plaintiff's place, resided, one of them within two miles, one within two and a half miles, and one within four miles of the defendant's place, in Suffield, the latter two upon the same road, and they were all at home on the first of April, and the plaintiff expected, if the defendant had been at his house, and had manifested a disposition to perform his part of the covenant, to send for the mortgagees and to pay off the encumbrances, unless he could arrange to transfer them to the property he expected to acquire from the defendant. The plaintiff intended, in good faith, to perform his part of the covenant, and had made such arrangements towards this object, that if the defendant had not been absent, but had met the plaintiff, agreeably to the arrangment, at a seasonable hour of the day, it would have been in the plaintiff's power, subject only to the contingencies necessarily attendant on such transactions, to fulfil his part of the contract; but the arrangements for removing the encumbrances and procuring the money would probably have occupied some hours before the plaintiff would have been in a condition to convey to the defendant an unincumbered title, and to pay to the defendant the money, to which he would be entitled under the contract.

Upon the part of the defendant, it was claimed, that the

plaintiff, in order to recover, ought, on the first of April, to have been ready without delay, and without risk of the contingencies to which his arrangements were necessarily liable, to make an unencumbered title to the defendant, and to pay to him the money to which he was entitled, under the contract.

On the part of the plaintiff, it was claimed'that if he had made arrangements, such as would with reasonable certainty secure the performance of the contract on his part, if the defendant had done his duty in being at home, this was a sufficient readiness on his part, to enable him to maintain the action, and the court found that, if upon the foregoing facts this court should be of opinion that the plaintiff ought to recover, then judgment should be rendered for the plaintiff, to recover the sum of $250 damages, and costs, unless this court should be of opinion that the defendant was entitled to a new trial, on account of the rejection of certain evidence which was offered, by the defendant, to show that, after the execution of the aforesaid covenant between them, and before the time fixed for its execution, they mutually and verbally agreed to abandon the same, which evidence was received, subject to objection, but finally rejected by the court, upon the ground that it was not competent, by such parol testimony, to dissolve the written and sealed agreement of the parties.

*L. F. Robinson* and *W. D. Shipman*, for the plaintiff, contended, that;

I. In covenants founded upon concurrent conditions, a readiness and willingness to do an act are equivalent to actual performance, in case of the refusal, or of what is tantamount to a refusal, the absence, of the other party. *Kemble* v. *Mills*, 39 E. C. L. R., 640, (642:) 1 Chitt. Pl., 284: *Morton* v. *Lamb*, 7 Term. Rep., 125. *Tasker* v. *Bartlett*, 5 Cush., 359.

2. The phrase "ready and willing" is to be construed in

its ordinary sense, and implies merely a physical ability, suitable preparation and a disposition to perform the acts required. *Rawson* v. *Johnson*, 1 East., 202, (206,) per Ld. Kenyon. *Cort* v. *Railroad Co.*, 6 E. L. & Eq. R., 230, (235,) per Ld. Campbell. *Borden* v. *Borden*, 5 Mass., 67. *Hammond* v. *Gilmore*, 14 Conn. R., 479. This degree of readiness is established by the finding.

3. If formal acts are essential to constitute "readiness," the plaintiff may be as clearly excused or prevented, by the conduct of the other party, from acts of *preparation* as of performance. *Cort* v. *Railroad Co.*, 6 Eng. L. & Eq. R., 230. *Jones* v. *Barclay*, 2 Doug., 684. *Southworth* v. *Smith*, 7 Cush., 391. *Rawson* v. *Johnson*, 1 East., 202. *Williams* v. *U. S. Bank*, 2 Pet., 965.

4. The absence of the defendant, from the place where it was expressly arranged that the preparations should be completed and the covenant should be performed, rendered further preparation, under the special circumstances of the case, either impossible or nugatory, and therefore either prevented or excused it; especially as the absence was manifestly voluntary, and so understood by the plaintiff. He was justified in expecting the defendant's presence, and properly refrained from pursuing the idle ceremony of an outward preparation, the benefit of which he was fully assured the other party was fraudulently avoiding. *Southworth* v. *Smith*, 7 Cush., 391. *North* v. *Pepper*, 21 Wend., 636. *Avery* v. *Stewart*, 2 Conn. R., 84. *Gilmore* v. *Holt*, 4 Pick., 258.

5. It would be unconscionable to permit the defendant, under such circumstances, to plead, that, if he had not refused to perform, other contingencies might have disabled the plaintiff from perfecting his preparations. It is true, that the plaintiff might have been robbed and murdered, while going after his money; but the court will not presume it.

II. A sealed executory contract cannot be released, or rescinded, by a parol agreement, especially if the latter is exec-

utory. *Smith on Contracts*, 84. *Delacroix* v. *Bulkley*, 13 Wend., 71. *Allen* v. *Jaquish*, 21 Wend., 628.

The parol contract in the present case, was not a substituted agreement, founded on a new and independent consideration, and performed in whole, or in part, but a simple verbal discharge.

*Hooker & Philleo*, for the defendant.

I. In an action for breach of contract, where the covenants are mutual, dependent and concurrent, the plaintiff, in order to recover, must prove, 1, that he performed all his own duty; 2, that the defendant failed to perform his duty. If both parties are in default, neither can recover against the other, though there is a difference in the degree of default. Courts will not measure the difference of blame, in the conduct of parties, and apportion damages to the one least blameable, any more in the case of a breach of contract than in a case of personal injury. *Park* v. *O'Brien*, 23 Conn. R., p. 345. *Neal* v. *Gillett*, id. 443–4. Even if the rule were otherwise, it plainly appears, by the finding in this case, that the defendant was more nearly ready than the plaintiff, and so less in default.

II. To gain a right of action, a plaintiff must perform his covenant, or, in lieu thereof, tender a performance, made of substance, by a present readiness and ability, to perform, or he must be excused from performance, or tender, or present readiness and ability, by some words, or acts, of the other party.

The defendant's absence waived absolute performance and a mere formal tender, but not a state of readiness and ability to perform. No circumstance is found which gives any significance to the defendant's absence, except its continuance to a late hour of the day. Until this absence had been protracted so long that there was no longer time for the defendant to return and make and deliver a single deed, he was not in default, and until he was in default, there was no waiver of anything by reason of his default, and it appears by the find-.

ing, that long before this hour arrived, the plaintiff having, unlike the defendant, much to do in order to get ready, had become hopelessly in default.

The distinction between the cases cited, (6 Eng. L. & Eq., 230, and 2 Doug., 684,) and this case, is obvious. In those cases, at the time of the waiver, the party whose further performance was waived, was not in default, but was as ready, as by the terms of the contract. he was bound to be at that time ; but here, there was no waiver until the absence of the defendant has been protracted to such an hour, that there was no longer time for him to return and perform, and at that time, the plaintiff was in default himself, inextricably, and had been so for " some hours."

By the finding it appears, that at no time during the day was the plaintiff actually ready and able, and it does not appear that he ever could have been ready, for certain contingencies are found to have actually existed, none of which were caused by the defendant's absence, and which, long before the time had arrived at which it was no longer possible for the defendant to return and perform, had ripened from contingencies into absolute impossibilities.

Unless waived, (and here there was no waiver, at least, until a late hour of the day,) the readiness required of the plaintiff, seeking to gain a cause of action against the defendant, was a present readiness and ability, subject to no contingency, and, at any rate, not subject to contingencies " of the sort to which such a transaction as this was necessarily liable." *Holmes* v. *Holmes*, 12 Barb., 137. *Tyler* v. *Young*, 2 Scam., 445. *Bank of Columbia* v. *Hagner*, 1 Pet., 455. *Cornwall* v. *Haight*, 8 Barb., 327. Chit. on Con., 570. 1 Sw. Dig., 199–200. 2 Greenl. Ev., § 603.

2. Was the defendant inexcusably in default? This does not appear in the finding, and this court will not presume a fact not found by the court below, especially, as, in this case, the defendant offered testimony to explain his absence ; and it is not seriously claimed that the defendant's absence was

with a fraudulent intent. But the defendant was not bound to be present, until his presence was requisite, which was not the case, so long as the plaintiff, himself, was totally unprepared.

The defendant even had a right to rescind the contract under the circumstances in this case. *Judson* v. *Wass*, 11 Johns. R., 525. *Holmes* v. *Holmes*, 12 Barb. R., 137.

From mutual acts only, is the party, who is present, absolved in the other's absence, (if even from these;) for, to gain a right of action, in the case of mutual and concurrent covenants, more must be done than is requisite for the purpose of avoiding the penalty of a breach. *Porter* v. *Rose*, 12 Johns. R., 209. *Smith* v. *Loomis*, 7 Conn. R., 110; 1 Chitt. Pl., 326.

II. The testimony, rejected by the court, ought to have been admitted.

1. As matter of defence. A sealed contract may be waived or abandoned, before breach, by a subsequent executed agreement, either verbal or in writing not under seal. *Hall* v. *Stewart*, 5 Day, 428. 1 Green. Ev., § 302–3. *Dearborn* v. *Cross*, 7 Cow., 48. *Lattimore* v. *Harsen*, 14 Johns., 330. *Munroe* v. *Perkins*, 9 Pick., 301–2–3. *Lefevre* v. *Lefevre*, 4 S. & R., 241. *Heard* v. *Wadham*, 1 East. R., 619, p. 630. 1 Sw. Dig., 300. *Imlay* v. *Huntington*, 20 Conn. R., 147.

2. To explain the absence of the defendant, which the plaintiff may otherwise claim was fraudulent, and that he was thereby excused from what otherwise would have been his duty.

STORRS, J. The parties were under covenant obligations to exchange real estate on a day certain. A place of meeting had been provided for, by verbal arrangement, as they resided in different towns; and it was further agreed that they should together proceed to an attorney's office, where the necessary conveyances might be drafted at the proper time. The plaintiff repairs to the place in question, which

is the residence of the defendant, in another town, for the purpose honestly entertained, of performing the contract. The finding shows that the plaintiff had it in his power to perform, (unless prevented by extraordinary contingencies, the occurrence of which a court will never presume, or imagine,) and that he would have performed, had the defendant presented himself, within a reasonable time, to receive the benefit of the plaintiff's acts. The defendant remained absent during the whole day, and as no excuse is offered for this breach of duty, we are compelled to infer that it was intended to defeat the contract, and fraudulent. That it was a refusal, is conceded. The only defence set up is, that the plaintiff failed to finish certain formal acts of preparation, and to make an outward manifestation of his ability to the fullest extent possible. It seems to be claimed that he was bound to do every thing towards performance, that the defendant's absence did not render physically impossible,— that the absence excused no other defects of performance than those which it was impossible for him to have supplied, without the defendant's presence. Such a claim is an interposition of extreme technical suggestions against the requirement of common honesty, and brings to mind the just observation of Lord Kenyon in a similar case. *Rawson* v. *Johnson*, 1 East., 206.) " However technical rules are to be attended to, and in some cases they cannot be dispensed with, yet in administering justice, we must not lose sight of common sense; and the common sense of this case will not be found to militate against any rule of law." At all events, however such a case as the present, or as that of *Cort* v. *The Ambergate Railway Company*, (6 E. L. & Eq. R., 230,) might have been decided in Lord Kenyon's time, we cannot but think that, in this age, a court would be slow to overrule the principle of justice recognized in the latter decision, and which we have endeavored to apply to the present action.

It is not claimed that a tender of performance is necessary, to entitle the plaintiff to a recovery; that was physically

impracticable. But it is justly said that the proof must show, that the plaintiff was "ready and willing" to perform; and the disposition and ability being proved, the only remaining objection relates to the degree of preparation. The plaintiff had not his money in his formal possession; he had not cleared his own estate of incumbrances; and had not prepared the title-deeds of his property; all these preparations he had suspended, in view of his arrangement to meet the defendant, at which he expected some facilities to be furnished by the defendant, not necessary, but convenient to himself; but all which preparations he was able to complete, and would have completed, if the defendant had not by his absence, under the peculiar circumstances of the case, induced him to desist. By yielding to this inducement, it is said, he has defeated his own right to a recovery. The argument is, that, although the plaintiff was naturally and rightfully convinced by the unexplained, and evidently contrived absence of the other contracting party, that the latter was determined to break the contract, and was thereby dissuaded from the nugatory and superfluous acts of taking his money into his manual possession, of procuring the release of mortgages and actually drafting and acquiring conveyance of his own real estate, he thereby fell short of his duty; that there is a legal and arbitrary standard of readiness, which is not to be affected by the absence of the other party; that the legal effect of absence is limited to the mere excuse of the tender of performance; that, in cases like the present, the act of a party will not, as his declaration would, justify the other in attaching to it an ordinary and natural import; that the act of absence, no matter what its attendant circumstances, or how clearly it reveals a fraudulent intent to violate a contract, has a limited and arbitrary legal effect; and that a party, who by such conduct actually causes another, not unreasonably, to suspend the further performance of his contract, can take advantage of his own wrong and set up the defect of performance, as a breach of legal duty; that the

party, claiming to be excused, must show that he is excused by the law, and not by the other contracting party; as if there were any legal duty under a contract, which the parties may not dispense with by their own voluntary acts.

Notwithstanding some confusion in the decisions arising from the endeavor of courts to apply, in this class of controversies, the principles of common reason and justice to the particular case, we have been unable to find that any such legal and arbitrary standard of readiness exists, as is thus suggested, or that there is any prescribed legal effect to the wilful absence of a contracting party from the place of performance, or that the extent of necessary preparation may not vary with circumstances, and the attitude of the other party, or that a refusal will only excuse from such covenant duties, as it may render impossible to perform. On the contrary, we think it to be a demand of justice, that a wilful refusal, with which a wilful absence is conceded to be identical, will excuse the performance of all acts, including formal acts of preparation, of which the refusal fairly imports a renunciation and disavows the acceptance; in other words, of all acts, of the failure to do which the premeditated conduct of the other party is, in a just and reasonable sense, the direct and undeniable cause.

In the case above referred to, (*Cort* v. *The Ambergate Railway Company*,) a party had covenanted to manufacture and to furnish the defendants with a specified quantity of certain necessary parts of a railway track, to be paid for on delivery. Before the contract was completed, the company gave notice that they had no occasion for any more of the articles in question, and should not pay for them, if forwarded. No more therefore were manufactured, or tendered, and a suit was brought, not for the quantity delivered, but on the covenant itself; the declaration alleging a readiness and willingness to deliver the residue of the property, and a refusal, on the part of the defendants, to accept it. These allegations were traversed, and the defendants insisted that they

had manifestly never refused to accept that, which could never have been tendered to them, and that the plaintiffs, plainly, were not "ready and willing" to deliver goods, which never had been in existence. And they might have argued, as is argued here, that their refusal to pay for any more articles did not prevent the plaintiffs from manufacturing and tendering the residue, and that the latter should have done this, before averring a readiness to perform their duty under their special contract. The court were thus compelled to decide whether there was any technical standard of readiness to be adhered to, at all events, by the party seeking to recover upon such covenants, or whether formalities of preparation might be dispensed with, after a refusal by the other party. Lord Campbell, in justifying the jury in finding that the plaintiffs were ready and willing to perform the contract, emphatically says: "in common sense, the meaning of such an averment of readiness and willingness must be, that the non-completion of the contract was not the fault of the plaintiffs, and that they were disposed and able to complete it, if it had not been renounced by the defendants." The defendants, having insisted that they did not prevent, or discharge the plaintiffs, from furnishing the residue of the property, the court say further, " may I not reasonably say that I was prevented from completing a contract by being desired not to complete it? Are there no means of preventing an act being done except by physical force, or brute violence?" And again: " 'discharge' only means, like 'prevent,' that the act of the plaintiffs was the cause of the residue of the chairs not being delivered, and of the contract not being further executed, or performed." The case before us does not require us to go to the full extent of the decision just cited. In that transaction, there was a physical impossibility of completing the preparation, requisite to constitute an absolute "readiness," on the last day of performance; the present plaintiff, had the defendant appeared at a reasonable hour, could have perfected his preparations. But from the Eng-

lish decision we draw the important inference, that a refusal of one party to perform his covenants, will excuse a want of entire and absolute preparation by the other.    The doctrine, however, was not new.    In *Jones* v. *Barklay*, (2 Doug. R., 684,) one of the concurrent acts to be performed was the execution and delivery of an assignment of an equity of redemption.    The plaintiffs averred that they had offered to execute, and tendered an unexecuted draft of such an assignment, but that the defendant absolutely discharged the plaintiffs from executing the same, or any assignment, or release whatever.    The argument was, that this was insufficient; that "the plaintiffs ought to have done every thing they had engaged to do, as far as was in their power, without any concurrence of the defendant; they might have executed a release, but instead of doing so, they only tendered a draft of a release."    Lord Mansfield pronounced the judgment of the court.    "If ever there was," said he, "a clear case, I think the present is.    *    *    *    *    The question is, was there a sufficient performance?    The party must show he was ready; but if the other stops him on the ground of an intention not to perform his part, it is not necessary for the first to go further, and do a nugatory act."

We are called upon to determine simply, whether the voluntary, and fraudulent absence of the defendant was such a refusal, as to be the direct and reasonable cause of the plaintiff's omission to complete his preparations.    If this were not so, he would fall short of a legal readiness to perform.    If it were so, we cannot assent to the claim of the defendant, that the effect of such an absence was only to dispense with such acts as the plaintiff could not perform, without the defendant's personal presence.    As a place of meeting had been expressly assigned, and an arrangement had been made, for completing, at least, some of the necessary preparations of the plaintiff, after the parties should meet, we think that the plaintiff was justified in concluding, after waiting until the latter part of the day, that the defendant was wilfully absent-

ing himself, as we also think the finding shows the fact really was, and meant thereby a total and absolute refusal to execute the contract; that the plaintiff was justified in treating this conduct of the defendant, in the same manner as if the defendant had met him in the early part of the day, and told him that he need not take another step towards the consummation of their agreement; that as for himself, (the defendant,) he would not, under any circumstances, perform. Had this been done, it would not be insisted that the plaintiff should, notwithstanding, have proceeded to take his money into his manual possession and remove the incumbrances on his land. We think that the defendant's absence was the cause of the plaintiffs suspending his preparations; that the latter acted reasonably in permitting himself to be operated upon by the defendant's conduct, as he was, and in drawing the inference from it which he did, and that the defendant should not now be permitted to set up a defect of readiness on the plaintiff's part, of which he was himself the cause, and from which he thereby excused and discharged the other. In short, we do not sanction the idea, that a wilful absence from the place appointed for the completion of a contract, especially when it is previously understood that a part of the preparations are to be there made, is equivalent only to a waiver of tender of performance; but that it carries with it an excuse for a suspension of formal preparation, whenever such suspension would be the natural effect of reasonable and just inferences drawn by the other party from such absence and its attendant circumstances. Such would be the case with an express refusal; there is no just reason why the conduct of a party should not bind him to the same extent as his words. That a voluntary absence, such as we are considering, has a greater effect than is assigned to it by the defendant's counsel, is apparent from a case cited at the bar. (*Southworth* v. *Smith*, 7 Cush. R., 391.) Upon a claim made that the money to be tendered, in fulfilment of a contract with a party fraudulently absent, should have been

Smith *v.* Lewis.

counted, and that, for failure to do this, the demandant had not done all that was necessary, the court held, that the same reason, which excused an actual tender, was a sufficient answer to the other objection suggested, although it was clearly an act, which the absence did not prevent. Having concluded that the plaintiff was ready and willing in all particulars, except in such as he was excused and discharged from completing, by the fault of the defendant, we think him entitled to recover.

As to the other point in the case, we are of the opinion that the court properly refused to hear evidence relative to a parol executory discharge of a sealed executory agreement. Whatever modifications may have been permitted, by courts, of the old common law maxim, *unumquidque ligamen dissolvitur eodem ligamine quo ligatum est*, and whatever may be the extent to which the courts of this state would adopt them, we are not aware that any case, of high authority, has permitted a mere verbal agreement for the release of a covenant under seal, without an execution by the cancellation, or surrender, of the covenant itself, to operate as a discharge of the most solemn instrument known to the law. 6 Co. 43, a. Cro. Jac., 99. 2 Wils. R., 86. 1 Taunt. R., 429. 10 Wend., 180. 11 id., 27. 13 id., 71. Cow. & Hills' notes to Phill. Ev., 1479. It is clear that sealed contracts for the performance of future acts would be of little avail, if parol testimony could be received to show that the parties verbally agreed, before the time of performance arrived, to dispense with the obligations of the covenant.

We advise a judgment for the plaintiff.

In this opinion, HINMAN, J., concurred.

ELLSWORTH, J.    I am not satisfied with the result to which the court have come in this case, though I do not question many of the positions taken in the opinion of my brethren.

VOL. XXIV.            81

The covenants, in this instrument, are conceded to be mutual and dependent. Hence it was necessary for the plaintiff to aver, in his declaration, that he was ready and willing to perform, and, in order to establish the truth of the averment, to prove that, on the first day of April, 1852, he was at the residence of the defendant, in Suffield, able and ready to pay the defendant $2,000, in money, and give him a clear and perfect title by deed, to the plaintiff's real estate in Windsor; and that he tendered all this to the defendant, or was excused from doing it.

What then are the facts? On the first of April, there were on the plaintiff's land, three outstanding valid mortgages, for the sum of about $1900; one of which had been given only three days before. The plaintiff did not tender a deed from himself, nor did he make, or procure a deed to be made. The plaintiff was likewise to pay $2,000 in cash, on the exchange of deeds. This sum it appears he had, before the day, furnished himself with, though it does not appear that he carried it to Suffield, or could, or would, certainly, have paid the defendant, if the defendant had been at home, although it may be inferred that he could have got it and tendered it.

In this equivocal condition, he presented himself on the first of April, at the defendant's dwelling house, and said to some of the family that he was ready to perform his contract. The defendant was absent from home; but on what account, or for what cause, does not appear; whether he was absent of choice, or from necessity, or other cause, or perhaps having no faith in the sincerity or ability of the plaintiff to perform, or believing that the whole thing had been abandoned, as he attempted to prove on the trial (but the court would not permit it,) treated the thing as unimportant and went about his business, is not found by the judge below. The defendant's absence would undoubtedly bar a suit in his favor against the plaintiff, but, if I am correct, it did not excuse the plaintiff from an actual present ability and readiness on

his part, so far as it depended on himself, without the co-operation of the defendant, he could and should have paid off the three mortgages, and brought with him release deeds from the mortgagees, as well as a duly executed deed from himself, together with the $2,000, which he was to pay the defendant. None of these things did he perform. If the absence of the defendant is a good answer for this omission, then it would have been equally well for him to have remained at his own house, and proved what he has attempted to prove, since his going to Suffield had no effect whatever.

Now what is the defendant's excuse for not being actually ready to perform, as he ought to have been? Why, he had some kind of an agreement with two of the mortgagees, that, if he should desire it, and duly inform them, they would permit him to pay up their mortgages, or transfer to them security on the Lewis property, after he had got a good title to it from the defendant; and likewise agreed with one Corbin, who lived somewhere, at some previous day, that Corbin would help the plaintiff, to procure from $100 to $400, if wanted, the first of April; and with one Harmon, of Suffield, to obtain from a person who lived four miles west of him, if actually wanted and called for, the sum of $2,000, and would loan it to the plaintiff, on the security of the Lewis place, if all the parties could be present, and he would have the title, as soon as it had vested in the plaintiff. Nothing more was done by the plaintiff towards an actual readiness, or tender of performance, on the first day of April, because, as the plaintiff says, the defendant was not at home, as he had agreed he would be. The character of this kind of readiness may be learned from the testimony of Harmon, who was expected to get the money from a townsman, four miles off. He testified that he could not swear it would be so; he thought it would; and had no doubt it would have been so, had he been called on to go after the money.

The court further find, " that if the defendant had not been

absent, it would have been in the plaintiff's power, subject only to the contingencies necessarily attendant on such a transaction, to perform his part of the contract. These are the very contingencies, in the eye of the law, which prove that there was no present ability, or readiness, in the plaintiff, to perform. Had he attempted to be ready, as he should have done, he might have found it wholly impracticable, certainly on that day, as I am much inclined to believe would have been the case, and in that event, he would fail to show that the loss arose from the neglect of the defendant. I cannot refrain from the belief that neither party expected to perform. In the case of dependent covenants, the party who brings an action for the default of the other, is required to prove an actual, rather than a theoretical readiness, in order to show that he has done all he can do, and that the loss entirely arises from the defendant's neglect, and not the plaintiff's inability. A possible, or probable readiness is not enough, not even if he can show that his money is in the bank, and his papers can be made out at once, much less, if the money is to be run down, in the country, and an indefinite number of hours will be necessary to hunt up the persons concerned, even if at home, and get the papers ready, and the business prepared for completion.

I admit that a present readiness may be waived, and in some cases wholly omitted, but mere absence of the party, said to be in fault, is not such a case, though he had agreed to be present. There is no such rule of law, nor an adjudged case to support it, and to adopt such a rule would be found in practice equally unjust and impolitic, and would open a door for all sorts of experiments and tricks. Suppose, when the plaintiff called on the defendant, he had found him at home, but the defendant would not say one word to him, thinking perhaps the plaintiff was trying a device. Would that which the plaintiff supposes he has proved in this case, have supported his averment of readiness? certainly not. But mere absence makes the case no stronger, and I cannot

Smith *v.* Lewis.

readily see how a wilful absence varies it. I have under-stood the law to be, that the absence of the promisee, from the place where the contract is to be performed, is no waiver of the duty of the other party, to be there, presently ready to perform whatever he can do, or could have done, in the circumstances. And if he is not there, he can claim nothing for the default of the other. So are the authorities.

Judgment for the plaintiff.