[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Stephen Boudreau, and the defendant, Cathy Wozniak, first met on the commuter train form Greenwich New York. The plaintiff had an idea and the defendant had savings of $42,500. Plaintiff's idea was to buy an old home., renovate it and sell for a profit, and thus in November of 1985 they purchased as tenants in common a house located at 14 Joseph Street in Darien. They paid $167,700 using the defendant's $42,500 plus a mortgage loan of $125,200 from People's Bank. While living at the premises Miss Wozniak paid one-half of the monthly mortgage payments. After about six months the parties to this litigation decided to terminate their business relationship and the defendant moved out of the house, and Mr. Boudreau remained there until October of 1989.
On September 28, 1986 the parties met and signed an agreement which provided that the plaintiff Boudreau would execute a promissory note in favor of the defendant for the sum of $62,500 to be secured by a mortgage deed on the house. The defendant Wozniak in turn agreed to execute a quitclaim deed in favor of the plaintiff. $62,500 represented the initial down payment of $42,500 made by the defendant at the time the premises were purchased, plus one-half of the expected profit on the sale of the house. At the CT Page 512 time of this agreement, an appraiser had estimated that the house had appreciated by $40,000 in value.
The defendant furnished the plaintiff with a quitclaim deed releasing her interest in the premises and the plaintiff signed the promissory note and the mortgage deed. All of these documents had been prepared by an attorney but were turned over to the parties themselves and the attorney did not participate in or supervise the execution of these documents.
According to the terms of the promissory note the principal of $62,500 was due and payable to the defendant on September 1, 1988. The plaintiff was obliged to make monthly payments of $468.75 representing the interest on the note commencing August 15, 1986 and continuing until the principal was paid in full.
Between August of 1986 and March 1988, the plaintiff made approximately nineteen payments of interest, a total of $8,906.25. However, the parties subsequently both became aware that neither document had been validly executed pursuant to the requirements of General Statutes 47-5, which mandates two witnesses and an acknowledgement by the grantor before a notary public.
Thereafter, the plaintiff instituted this action seeking monetary and punitive damages as well as injunctive relief. He claimed in count one of his complaint that in reliance on the September 28, 1986 agreement he expended approximately $26,000 in improvements on the house; that he was prevented from securing a home equity loan because Miss Wozniak was on the title and had refused to sign a proper quitclaim deed; and that he was being threatened with the loss of the premises by reason of People's Bank foreclosing its mortgage. Mr. Boudreau also sought a return of the approximately $9,000 of interest on the promissory note that he had paid to the defendant Wozniak; about $9,000 he claimed to have incurred for legal fees; loss of credit rating; and compensation for the time he spent in court representing himself.
In the second count, the plaintiff alleged that the defendant made false representations in order to induce him to execute and deliver the promissory note in question. The third count, which was later dismissed by the court, claimed that he sustained emotional distress as a result of the defendant's failure to comply with the terms of the agreement.
The defendant counterclaimed alleging that she was owed CT Page 513 the principal sum of $62,500 well as the remaining interest on the note. She also claims costs of collection including reasonable attorney's fees as provided for in the promissory note in the event of a default.
At some time before the trial the plaintiff's attorney withdrew from the case and the plaintiff thereafter represented himself pro se. Also prior to trial, the Darien property was sold in a foreclosure of the first mortgage by People's Bank.
At the trial the plaintiff failed, in my opinion, to substantiate his claim that he had expended $26,000 on improvements to the house, although the defendant did agree that some work had been done. Plaintiff was unable to provide the court with a single invoice or receipt for work or materials. Furthermore, there was credible evidence submitted that he failed to complete much of the planned renovations of the Darien house, and also that plaintiff returned to the house prior to the foreclosure by the bank and removed many of the fixtures, leaving the house in considerable disrepair. The initial appraised value of the house at $231,000 was later reduced to $167,400 at the time of foreclosure. Even if he had proved such expenditures I do not understand the theory on which the plaintiff could recover from the defendant. She had moved out of the house and the plaintiff believed that he was the sole owner and was making improvements in order to maximize his profit on the expected sale. The fact that there was a foreclosure instead of a sale due to his failure to make the required mortgage payments starting in May or June of 1988, does not mean that the defendant is liable to Mr. Boudreau for any such expenditures.
The basic issue in this case is whether valid consideration was given to the plaintiff in exchange for his executing an admittedly proper promissory note, although it was secured by an improperly executed mortgage deed. The defendant indeed intended to relinquish her interest in the property by executing and delivering the original quitclaim deed. She also gave the plaintiff complete possessory control over the house. However, because both parties were unaware of the legal requirements pertaining to the proper execution of deeds they did not obtain the attestation of two disinterested witnesses on either the quitclaim deed or the mortgage deed. General Statutes 47-5. See also Winsted Savings Bank and Bldg Assn v. Spencer, 26 Conn. 195, 198
(1857), and Bowne v. Ide, 109 Conn. 307, 314 147 A. 4
(1929) ("This deed. . .is void for lack of one witness and of the acknowledgment.") It was also pointed out in Bowne that CT Page 514 the Validating Acts (see, for example, Special Act No. 89-6, 3) cannot validate deeds such as are involved in this case, as these acts apply only to defective deeds that have been duly recorded.
However, the quitclaim deed and the mortgage, although admittedly not properly executed or recorded, nonetheless are valid as between the parties to this action. Am.Jur., Records 157 ("Since recording is required for the protection of third persons, the recording statutes do not change the rule that an unrecorded deed, or mortgage, is valid as between the parties thereto.") See also General Statutes 47-17 which provides that "An unacknowledged deed, and any instrument intended as a conveyance of land, but which by reason of a formal defect operates only as a conveyance of an equitable interest in such land. . .may be recorded."
Willet v. Overton, 2 Root 338, 341, 1 App.Div. 72 (1976), stated that "[N]o. . .deed of bargain and sale, or mortgage. . .shall be accounted good and effectual in law to hold such houses and lands, against any other person or persons whatsoever, but the grantor. . .unless the. . .deed thereof, be recorded." A more modern authority is In Re Davis, 109 B.R. 633 (Vt. 1989), which held that an unacknowledged deed which is, in effect, unwitnessed is invalid under Vermont law except as between the parties. The court stated that the deed was "evidence to show agreement by the grantor to execute a valid deed, though it is not conclusive evidence. "Id., 638. It was further stated that if the parties intended to execute a deed, "In a proper case equity may enforce the agreement." Id.
Thus the defendant should be deemed to have in fact quitclaimed her equitable interest in the premises to plaintiff Boudreau, and also the plaintiff's promissory note should be considered as having been secured by a mortgage valid as between the parties, although not formally recorded. In fact, the question of whether the defendant provided Mr. Boudreau with legal title to the property is moot, since the property in question was foreclosed. Therefore, the resolution of this action does not turn upon the legal rights of Mr. Boudreau in the property, since clearly he has none, but upon equitable considerations. "Where the question necessarily turns upon the legal rights of the parties, rather than upon equitable considerations, the question . . . is, has the plaintiff made out a legal title?" Winsted Savings Bank and Building Association v. Spencer, 26 Conn., supra, 198. CT Page 515
In October of 1986, upon recognition of the error, plaintiff requested that the defendant provide him with a valid deed, and she agreed to meet him at a bank in order to execute a quitclaim deed in the proper manner for recording, witnessed and notarized as required by law. Plaintiff Boudreau failed to keep this appointment. Sometime later he told Miss Wozniak that he was facing financial difficulty and would be unable to make any further payments on the promissory note.
Mr. Boudreau again requested that defendant Wozniak provide him with a valid deed despite his statement that he would not fulfill his obligations under the contract and the defendant, justifiably in my view, refused to do so.
This failure to appear at the meeting, coupled with his subsequent statements, indicates that the plaintiff repudiated the contract. In Smith v. Lewis, 24 Conn. 624,633, 63, Am.Dec. 180 (1856), the plaintiff brought suit for breach of contract alleging that defendant's absence from the place of meeting amounted to a refusal to perform the contract. In Smith, the plaintiff and defendant had agreed to exchange real estate. The plaintiff was to pay a sum of money, and the parties agreed to complete the transaction at a subsequent time and place. Plaintiff appeared at the time and place agreed, but defendant was not present, and the court held that the plaintiff was entitled to recover. "A willful absence from the place appointed for the completion of a contract, especially when it is previously understood that a part of the preparations are to be there made. . .carries with it an excuse for a suspension of formal preparation, whenever such suspension would be the natural effect of reasonable and just inferences drawn by the other party from such absence and its attendant circumstance." Id., 633.
The court finds that the defendant Wozniak was ready, willing and able to perform her obligations under the contract, until the plaintiff failed to appear at the planned meeting and communicated to her that he would not perform his obligations. This repudiation of the contract on the part of the plaintiff constitutes an anticipatory breach, referring to the duty of rendering a performance for which the injured party bargained and which has been specifically promised. Corbin, Contracts (1st Ed., 1964), 1053; Calamari and Perillo, Contracts, 12-2, 2d Ed. (1977).
Prior to this anticipatory breach of contract by Mr. Boudreau, the defendant intended and was willing to give him CT Page 516 a quitclaim deed in proper from for recording, which is deemed to constitute the consideration necessary to support the validity of the promissory note as between the parties. The original agreement did not specify a time limitation on when the quitclaim deed was to be executed. The defendant executed a partially complete the document in a proper manner until Mr. Boudreau decided he was not going to keep his part of the bargain.
Since the promissory note was validly executed by the plaintiff for consideration, that is, the quitclaim deed by the defendant releasing her interest in the property, and is valid as between the parties, the defendant should prevail on her counterclaim for $62,500, plus interest on this note. The plaintiff claims he is entitled to a set-off but, as stated previously, he failed to prove the amount of the expenditures and there was no agreement that he would be reimbursed for the work he did on his own home, and I see no reason to do so.
Therefore judgment may enter for the defendant Wozniak as to plaintiff's complaint, and in her favor on the counterclaim. Accordingly she is entitled to recover from the plaintiff Boudreau $62,500, representing the principal of the promissory note, plus interest of $19,015.71 at 9% interest per year from March 15, 1987, when he stopped making payments on the note, to the date of judgment, plus a reasonable attorney's fee of $5,000, as provided for in the note in the event of a default, and costs as taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut this 31st day of July, 1990.
WILLIAM B. LEWIS, JUDGE