## McKLEROY *vs.* TULANE.

[BILL IN EQUITY TO ENFORCE VENDOR'S LIEN FOR PURCHASE-MONEY OF LAND.]

1. *Allegations of vendor's bill to enforce lien for unpaid purchase-money.*—Although, under an executory contract of sale, the necessity for a formal tender of a conveyance by the vendor on the appointed day is dispensed with, if the purchaser has previously notified him that he would not take the property; yet, if the vendor afterwards files a bill in equity to have the land sold for the payment of the purchase-money, his bill so far partakes of the character of a bill for specific performance, as to make it necessary for him to show that, on the appointed day, he was, or at least would have been, if the contract had not been renounced by the purchaser, able, ready and willing to make full performance of all the stipulations of the contract on his part.

2. *Construction of executory contract of sale as to stipulations for covenants by vendor.* A stipulation on the part of the vendors, in an executory contract of sale, that they will make, or cause to be made to the purchaser, " a good and sufficient deed or other conveyance or conveyances in the law for conveying and assuring" the property to the purchaser, "which deed or deeds shall contain the usual full covenants and warranty of title of the premises to the party of the second part, free and clear of all liens and incumbrances whatsoever,"—binds them to deliver deeds containing covenants equivalent, in extent and operation, to the covenants of seizin, freedom from incumbrances, and general warranty.

3. *Estoppel en pais against purchaser from alleging insufficiency of vendor's title.* The mere failure of the purchaser to object to the sufficiency of a deed, when informed by his vendor that the deed was ready for delivery on the appointed day, does not estop him from afterwards insisting that the vendor was unable to comply with all the stipulations of his contract, when it is not shown that he ever saw the deed.

APPEAL from the Chancery Court at Wetumpka.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by William H. McKleroy,
against Paul Tulane and others, and sought to have a
tract of land sold for the payment of the purchase-money.
The land was bought by McKleroy & Co., a mercantile
partnership in Wetumpka, which was composed of the
complainant and one Leonard H. Hamilton as equal
partners.  Hamilton died in New York, in 1846, having
executed his last will and testament, wherein he appointed
Francis Daniels his executor, and bequeathed his interest
in said land to his several brothers and sisters as residuary
legatees, to be equally divided between them.  Daniels
qualified as executor, and, on the 10th October, 1851,
jointly with the complainant, entered into a contract for
the sale of the land to the defendant.  This contract, as
exhibited with the bill, was, in the following words:

"This indenture, made and executed this 10th October,
1851, between William H. McKleroy and Francis Daniels
of the first part, and Paul Tulane of the second part,
witnesseth, that the said parties of the first part have
agreed to, and do hereby agree that they will sell and
convey, or cause to be conveyed, to the party of the second
part, the following described property, viz.," (describing
it;) "the price, or consideration, to be $5,500, payable in
cash on the delivery of the deeds.  And the parties of
the first part covenant and agree, that they will, at their
own expense, on the first day of January next, make,
execute and deliver, or cause and procure to be made,
executed and delivered, to the party of the second part,
a good and sufficient deed or other conveyance or convey-
ances in the law for conveying and assuring to the party
of the second part the above-described premises; which
deed or deeds shall contain the usual full covenants and
warranty of title of the said premises to the said party of
the second part, free and clear of all liens and incum-
brances whatsoever.  And the party of the second part
hereby covenants and agrees, that he will purchase the
said premises, for the price, and on the terms above set

forth; and that on the first day of January next, on receiving such deed as above stipulated, he will pay in cash to the said parties of the first part the said sum of $5,500. And it is mutually understood and agreed, that all the covenants and stipulations herein contained shall apply to and bind the respective heirs, executors, administrators and assigns of the said parties to these presents. In witness whereof, the said parties have hereunto interchangeably set their hands and seals," &c.

The bill alleged, in addition to the facts above stated, that said Daniels had no individual interest in said land at the time he entered into this contract, "but merely entered into said contract, and signed said indenture, by way of assurance that the devisees of Hamilton, his testator, should make the conveyance stipulated upon the payment of said money, so far as their unidivided half interest in said land was concerned;" that complainant caused a deed to be prepared at his own expense, which he executed jointly with his wife, "and by which his undivided half interest in said land was conveyed by warranty titles to said Tulane;" "that said deed was a good and sufficient deed, and was sent to said Daniels, then in New York city, to be handed by him to said Tulane, prior to said first day of January, pursuant to said agreement;" "that said Daniels received said deed, and obtained deeds to said lot from said Carlos, Christiana and Nancy [the devisees of Hamilton] for their interest, and notified said Tulane that he had the necessary deeds from all said parties, with the usual full covenants and warranty of title to said premises, and was then ready to deliver the same to him, or to deliver them on said first day of January;" "that said Tulane at first expressd himself entirely satisfied with the said deeds, or the deed of complainant," but afterwards, and but a few days before said first day of January, "notified said Daniels that he would not take the said premises;" that said Daniels, in consequence of this refusal on the part of Tulane, did not deem it necessary, on said first day of January, to make a formal tender of said deeds and demand payment of the purchase-money, which he would have done but

for said previous refusal on the part of Tulane; that complainant "did, or offered to do, or caused to be done, all that was necessary and proper for him to do under the terms of said contract;" "that said Daniels was ready, and offered, to do all that was necesary to be done to secure good and warranty titles to the undivided half interest in said lots which had descended to or was vested in said" devisees of Hamilton; that said deeds of complainant and said devisees "would have conveyed a good title to said Tulane, free from all incumbrance whatsoever;" and that said Tulane "expressed himself satisfied with the deed and title of complainant, and did not object in any respect to said titles." Daniels, Tulane, and the devisees of Hamilton, were made defendants to the bill; and the prayer was, for an account of the purchase-money due to complainant, a sale of the land to pay the amount, and general relief.

The chancellor sustained a demurrer to the bill for want of equity, and his decree is now assigned as error.

Wm. P. CHILTON, and N. S. GRAHAM, for appellant.

ELMORE & YANCEY, and R. M. CHERRY, *contra*.

R. W. WALKER, J.—The agreement alleged in the bill is one founded upon mutual and concurrent conditions: the stipulated conveyance by one party, and the payment of the purchase-money by the other, were to be contemporaneous acts, and each of the contractors was bound to perform on his part at the time fixed.—Whitehurst v. Boyd, 8 Ala. 375; Smith v. Lewis, 24 Conn. 624; Ledyard v. Manning, 1 Ala. 153; Smith v. Christmas, 7 Yerger, 565; 2 Lomax's Dig. 47; 4 Florida, 359.

The contract being a mere agreement on the one side to sell, and on the other to purchase, at a future day, the purchaser was not entitled to the possession of the property, until the performance of the executory contract. Sufferens v. Townsend, 9 Johns. 35; Cooper v. Stower, 9 Johns. 331. In such a case, if the vendee, prior to the time appointed for the payment of the purchase-money and the delivery of the deed, notifies the vendor that he

will not take the property, this will dispense with the formal tender of a conveyance by the latter. And yet, if a vendor, who has received such notice, applies to a court of equity to treat the agreement as an executed contract, and to direct the sale of the property for the payment of the purchase-money, his bill necessarily so far partakes of the character of a bill for specific performance, as to make it essential for him to show that he was able and ready, at the appointed time, to do that which by the agreement he had contracted to do; or, at least, that he was disposed, and, if the contract had not been renounced by the vendee, would have been able, on the day designated, to make full performance on his part. See Smith v. Lewis, 24 Conn. 624; Holmes v. Holmes, 12 Barb. 627; Smith v. Christmas, 7 Yerger, 565.

[2.] The undertaking of Daniels and McKleroy was, that they would make, or cause to be made, to Tulane, "a good and sufficient deed or other conveyance or conveyances in the law for conveying and assuring" the property to Tulane; "which deed or deeds shall contain the usual full covenants and warranty of title of the premises to the party of the second part, free and clear of all liens and incumbrances whatsoever."

We need not discuss the correctness of the position assumed by the chancellor, that there could be no performance of the agreement on the part of Daniels and McKleroy, except by the execution of a joint conveyance by them, with full covenants from each for the whole property; or that, if separate deeds could be allowed, still the covenants of each of the vendors should extend to the whole land, and not to separate moieties. The authorities certainly seem to sustain the proposition, that when several are bound by an executory agreement to make titles to another, all must join in the conveyance, and the covenants of each must extend to the whole land. Johnson v. Collins, 20 Ala. 443; Lawrence v. Parker, 1 Mass. 191; Clark v. Redman, 1 Blackf. 379.

But, however that may be, it is at least clear, that these parties undertook for the execution of deeds to Tulane, which were not only to be sufficient for conveying to him

the premises, but which were also to contain "the usual full covenants and warranty of title." The stipulation on their part relates, not only to the effect, but to the form of the deeds. The deeds are not only to convey a good title, but they are to contain the covenants named. The complainant must show, therefore, that he and Daniels were, or, but for the renunciation of the contract by Tulane, would have been, ready and able at the time appointed to deliver to the latter deeds corresponding, both in substance and in form, to the terms of their agreement.

Where the contract for the sale of real estate is silent upon the subject, the question as to what covenants for title the purchaser has a right to expect, is one to which the authorities are far from furnishing an uniform answer. Rawle's Cov. 559, *et seq.* But this is a matter always subject to be controlled by the express terms of the articles of sale; and, in the present case, the language employed is such as to leave but little room for controversy. Chancellor Kent says, that the usual covenants in a deed are—1st, that the grantor is lawfully seized; 2d, that he has good right to convey; 3d, that the land is free from incumbrances; 4th, that the grantee shall quietly enjoy; 5th, that the grantor will warrant and defend the title against all lawful claims.—4 Kent, 471. According to some authorities, the covenant of seizin embraces the covenant of right to convey; and according to others, the covenant of general warranty includes the covenant for quiet enjoyment, as the same is usually expressed in this country.—Rawle's Cov. 50, 53, 127, 237–8; Caldwell v. Kirkpatrick, 6 Ala. 60.

If these propositions are correct, the covenants of seizin, freedom from incumbrances, and general warranty, would embrace all the others. But these three covenants are distinct and different: each has a field of operation unoccupied by either of the others, and they are distinguishable alike in their objects and effects. The first two are broken, if at all, as soon as the deed is made; while the last, being equivalent to a covenant for quiet enjoyment, is not broken until there is an actual eviction, or some-

thing which the law deems a disturbance of the possession.—4 Kent, 471–2; Mott v. Palmer, 1 Comstock, 564; Anderson v. Knox, 20 Ala. 156; Caldwell v. Kirkpatrick, 6 Ala. 60; Rawle's Cov. 80, 83, 132, 235.

If this agreement had been silent as to the form of the deed, or if it had simply stipulated for a conveyance 'by warranty title,' or for the execution of a deed 'with warranty,' *it may be* that a conveyance which transferred a good title, and contained the covenant of general warranty, would have been deemed sufficient.—Rawle's Cov. 562–3; Rucker v. Lowther, 6 Leigh, 259; Clark v. Redman, 1 Blackf. 379; Hedges v. Kerr, 4 B. Monroe, 528; Bronson v. Cahill, 4 McLean, 19. That, however, is not the question here. The language of this agreement will not allow us to hold, that the contract of McKleroy and Daniels would have been complied with by the execution of deeds containing no other covenant than that of general warranty. They stipulate to deliver deeds which shall contain " the usual full covenants *and* warranty of title." Unless we repudiate all the rules which have been adopted for the construction of written instruments, we must conclude that the parties contemplated something beyond the mere warranty of title; and we hold, that by their contract Daniels and McKleroy bound themselves to deliver deeds containing covenants equivalent, in extent and operation, to the covenants of seizin, freedom from incumbrances, and general warranty.

The bill does not show that the vendors were, or but for the notice received from Tulane would have been, able and ready, on the appointed day, to deliver such deeds. The complainant avers, that he and his wife "conveyed by warranty titles," and that "the deed executed by them was a good and sufficient deed." The allegation in reference to the deeds executed by the devisees of Hamilton is, that Daniels "obtained deeds to the lot from the devisees for their interest." There is no averment that the deeds thus obtained contained the covenants stipulated for. It is true, there is an allegation that Daniels "notified Tulane that he had the necessary deeds from all of the parties, with the usual full covenants

McKleroy v. Tulane.

and warranty of title;" but we cannot hold that this is equivalent to an averment that the deeds did in fact contain such covenants. Nor is there any allegation that Daniels could have obtained from the devisees deeds with the required covenants. The 6th paragraph of the bill is obviously insufficient to show that the vendors had offered, and were ready and able, to perform their part of the agreement. The complainant should have alleged specifically what the parties in fact did, so that the court could determine whether the thing done was a compliance with their undertaking.—Cameron v. Abbott, 30 Ala. 416; Norris v. Norris, 27 Ala. 519; Cockerell v. Gurley, 26 Ala. 405.

It is said that Tulane expressed himself satisfied with the deeds, and that therefore he cannot now make this objection. This is a mistake. The bill contains no such averment. The allegations are, that Tulane "*at first* expressed himself satisfied with the deeds *or the deed* of your orator;" and, again, that "he expressed himself satisfied with the deed and title of your orator, and did not object in any respect to such titles." There is no averment that he ever expressed himself satisfied with the deeds from the devisees of Hamilton, nor in fact is there any allegation that he ever saw those deeds. And even if the statement that he "did not object in any respect to said titles," can be considered as referring to the deeds from Hamilton's devisees; still, his mere failure to object would not, under the circumstances disclosed by the bill, operate an estoppel.

The decree of the chancellor is affirmed.