# Burkett *v.* Munford.

*Bill in Equity to enforce Vendor's Lien on Land; Cross-Bill for Rescission of Contract.*

1. *Averment of offer or readiness and willingness to convey; when necessary.*—When the payment of the purchase-money, and the execution of a conveyance, are intended to be concurrent and contemporaneous acts, either party, seeking a specific performance, must aver his readiness and ability to perform at the appointed time; but, when the vendor executes a bond conditioned to make title generally, and the purchaser gives his note or notes payable on a day certain, the payment of the purchase-money is not dependent on the making of title; and in a bill by the vendor to enforce the payment of the purchase-money, it is not necessary that he should aver an offer on his part to convey, or his readiness and willingness to make title.

2. *Rescission of contract, on account of defect in title.*—When a purchaser of lands has been placed in possession under the contract, and retains it, the contract being free from fraud, a court of equity will not, at his instance, rescind the contract on account of a defect in the vendor's title; unless it is clearly shown that injury must result to him from an abandonment of the possession,—as, where he has paid a part of the purchase-money, or has made valuable improvements, and the vendor is insolvent.

3. *Same; averment of vendor's insolvency.*—An averment, in a bill by the purchaser, that the vendor "has not property in Alabama, or elsewhere, within the knowledge of complainant, except his interest in the

[Burkett v. Munford.]

estate of P.," his deceased son, the value of which is not stated, is not equivalent to an averment of his insolvency; nor would a general averment of his want of property, "within the complainant's knowledge," be sufficient in any case, unless accompanied with further averments showing all necessary diligence to ascertain his solvency and ability.

4. *Same; non-residence of vendor.*—If the non-residence of the vendor would, in any case, justify a rescission of the contract at the instance of the purchaser, while he remains in possession, it can not be made a ground of relief, when both of the parties are non-residents, and were when the contract was made.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. THOMAS COBBS.

The original bill in this case was filed on the 3d February, 1880, by Edward W. Munford, against Thomas M. Burkett and T. P. Moore; and sought to enforce a vendor's lien on a tract of land, for the balance of purchase-money due and unpaid. The land contained 356.14 acres, and was sold by said Munford to the defendants, at the price of $3,561.40, by contract entered into on the 29th January, 1876; executing to them his bond for title, which, after describing the land, and stating the stipulations as to the payment of the purchase-money, was conditioned as follows: "Now, if the sums specified as due, or hereafter to fall due, shall be fully paid, and if the said Munford shall thereupon, by deed, alien and convey all said described lands, and every part thereof, to said T. M. Burkett and T. P. Moore, or their assignee or assignees, or heirs, in fee simple, with covenants of seizin and general warranty, then this obligation to be null and void." Of the agreed purchase-money, $1,000 was paid in cash on the delivery of the title-bond; and for the residue, the purchasers executed their four promissory notes, each for $640.35, payable on the 1st January, 1877, 1878, 1879, and 1880, respectively. Possession of the land was delivered to the purchasers under the contract, and Burkett was in possession when the bill was filed, having bought out the interest of said Moore, and taken an assignment of the title-bond to himself. When the bill was filed, two of the notes for the purchase-money were unpaid in full, and a balance of about $400 was unpaid on another; and these notes were made exhibits to the bill. All of the parties resided in Tennessee when the contract was made, and also when the bill was filed.

A demurrer to the bill was filed by the defendants jointly; and the bill having been amended, by leave of the court, to obviate an objection specially assigned as ground of demurrer, Moore made no further defense. Burkett filed a demurrer to the bill as amended, assigning the following as causes of demurrer: "1st, that said bill does not allege that complainant is able, ready and willing, to make title to said lands, on pay-

ment of the purchase-money; 2d, that said bill does not offer to make title to the said lands, on payment of the purchase-money; 3d, that said bill does not allege that complainant, before he filed his bill in this case, offered to' make title to said lands on payment of the purchase-money." He also filed an answer to the bill, admitting the terms of the contract as alleged, but denying that the complainant had any title to the land, alleging that the true state of the title was as follows:

The land belonged to Paul J. Watkins, deceased, at the time of his death, whose daughter the complainant had married; and she afterwards died, leaving an only child, Paul J. Munford; and on the subsequent death of the child, leaving his father, the complainant, as his only heir, the latter became the administrator of his estate. A bill in equity was filed (at what time does not appear) by Thomas Masterson, as the administrator of the estate of said Paul J. Watkins, against the heirs and distributees, for a settlement and distribution of the estate; and the complainant in this suit was made a defendant to the bill, "as administrator and sole heir at law of Paul J. Munford, deceased." A decretal order was entered in said cause, in January, 1874, appointing commissioners to divide all the lands belonging to the estate which were incumbered with the widow's dower, into four parts as nearly equal as possible, and to distribute them by lot among the four parties in interest, the complainant in this suit being one of them, and to place them in possession of their respective portions. This decretal order, a copy of which was made an exhibit to the defendant's answer, further declared: " Said portions of land so allotted and put in possession of the distributees, are to be and remain fully subject to all such other and further orders and decrees of the court as, in the opinion of the court, may be necessary in the further administration and distribution of said estate; the division in no way to interfere with the full power of this court over said lands, nor any title to the same to be vested till the final settlement of the estate, by the payment of all the debts thereof, and other liabilities, and the proper adjustment of any inequalities in advancements, or partial distribution; it being the purpose of the court, in making this decree, to secure present homes of the lands to said distributees, but not in any way to prejudice the rights of creditors or parties."

The answer alleged, that said complainant was placed in possession of the lands involved in this suit, by the commissioners acting under this decretal order, and had no other title to said lands than such as might have accrued to him by law from the estates of his deceased wife and child, to be ascertained and settled by the final decree which might be rendered in said chancery suit; " that said estate has never been finally settled, and

no one can tell when it will be finally divided, said cause being still pending; that the lands belonging to said estate are held by the heirs as tenants in common, and no one has a title in severalty to any portion thereof;" that taxes have accumulated against the lands, pending said suit, and the costs of administration are yet unpaid. On these facts, and for these reasons, the respondent alleged that the complainant " can not comply with his obligation to make respondent a fee-simple title to said lands;" that he had erected valuable and permanent improvements on the lands, and had paid the greater part of the purchase-money, "and has been ready at all times to pay the balance on the same as it falls due; that he knew complainant could not comply with his covenant to make title on payment of the purchase-money, and [this] is the only reason for not paying the balance in full; that the complainant assured him, at the time of the purchase of said lands, that he would be able to make title as covenanted for, long before the maturity of the last note, in which all parties have been honestly mistaken. And respondent says, that he is ready, able and willing to pay the balance owing by him for said land, whenever complainant can make him the title which he obligated himself to make on the payment of the purchase-money; that the said complainant resides in the State of Tennessee, and has no property in the State of Alabama, or elsewhere, within the knowledge of respondent, except the interest before referred to in the estate of said Paul J. Munford, deceased." He therefore prayed that, as to these matters, his answer might be taken as a cross-bill; that the contract might be rescinded, and an account might be taken ·of the amount of purchase-money paid by him, and of the value of the permanent improvements erected by him, charging him with the value of the rents during his possession; and that the land might be sold for the satisfaction of the balance ascertained to be due him on such accounting.

The chancellor overruled the demurrer to the original bill, and sustained a demurrer to the cross-bill; and his decree on the demurrers is now assigned as error.

D. P. LEWIS, and W. P. CHITWOOD, for appellant.

E. H. FOSTER, and E. W. MUNFORD, *contra*.

BRICKELL, C. J.—It has been adjudged in this court, that when a vendor of lands executes a bond to make title generally, and the vendee gives his note or notes for the purchase-money, payable on a day certain, in a bill to enforce the lien for the payment of the purchase-money, it is not necessary the vendor should aver that he has offered, or his readiness and willingness

[Burkett v. Munford.]

to make title. The payment of the purchase-money is not dependent on the making of title; until it is paid, there is no duty resting on the vendor, of which the vendee can demand performance. The principle is one of general and frequent application, that when money is to be paid at an appointed time, and the day of payment is to happen, or may happen, before the thing which is the consideration of the payment of the money is to be performed, the performance of the thing is not a condition precedent to the right to demand the money.—*George v. Stockton*, 1 Ala. 136; *Chapman v. Chunn*, 5 Ala. 397; *McLemore v. Mabson*, 20 Ala. 137; *May v. Lewis*, 22 Ala. 646; *Teague v. Wade*, 59 Ala. 369; *Broughton v. Mitchell*, 64 Ala. 210.

When, however, as in *McKleroy v. Tulane*, 34 Ala. 78, the contract of purchase is founded on mutual and concurrent conditions—when the payment of the purchase-money, and the execution of the stipulated conveyance, are intended to be concurrent and contemporaneous acts, each party bound on his part to perform at the same time; the bill of the vendor, to enforce the lien, so far partakes of the character of a bill for specific performance, that he must aver his readiness and ability to perform on his part at the appointed time, or the vendee is not placed in default. The bond executed to the appellants stipulates, generally, for the making of title, on the payment of the purchase-money; and the bill, in its averments, is sufficient, under our former decisions, without averring the readiness and ability of the vendor to make title when the purchase-money is paid.

2. It is evident, from the allegations of the cross-bill, that there is no fraud or misrepresentation imputable to the vendor. The condition of the title was known to the vendees; and whatever of doubt may rest on it, each party supposed would have been removed before the time appointed for full and final payment of the purchase-money. The vendees were let into immediate possession, and have since retained and enjoyed it, without hindrance or molestation. When a contract of purchase is free from fraud, we know of no authority—there is none certainly in the decisions of this court—which will justify a court of equity in interposing, at the instance of the vendee, to rescind the contract, because of the vendor's want of title, or because the title is defective, while he retains possession of the land, taking the benefit of the contract; unless it is clearly shown that injury must result to him from the abandonment of the possession. When he has paid part of the purchase-money, or has made valuable improvements, if the vendor is insolvent, the vendee may, for his own indemnity, hold the pos-

[Burkett v. Munford.]

session, and claim a rescission, because the vendor can not make the title he had bound himself to make.

But the cross-bill does not aver the insolvency of the vendor, if it is conceded that it discloses real and substantial defects in the title. The only averment is, that he " has not property in the State of Alabama, or elsewhere, within the knowledge of respondent, except the interest before referred to, in the estate of Paul J. Munford, his son." This is obviously far from an averment of the insolvency of the vendor. The value of the interest of the vendor in the estate of his son is not averred, nor is it denied that it is of ample value to indemnify the vendees, if the title should finally prove defective, and, in consequence, injury should result to them. Nor can a mere general averment, that the vendees have not knowledge that the vendor has property sufficient to respond to them, be, in any case, accepted as an averment of the inability of the vendor to respond in damages, or of his insolvency. It may be, they have not been diligent in their inquiries as to his ability and solvency, and have not acquired the knowledge which they could have acquired. It is not on general, indefinite, and vague allegations, that a court of equity will intervene to rescind contracts fairly and deliberately made.

If the residence of the vendor without the State would, in any event, justify the court in entertaining a bill for the rescission of the contract, while the vendees remain in possession, it is, in this case, no good cause or reason for interference. The vendor was known to reside without the State, when the contract was made. Then and now, he and the vendees were and are resident citizens of the State of Tennessee ; and it was not in the contemplation of either that remedies against him for a breach of his contract would be here pursued.—*Griggs v. Woodruff*, 14 Ala. 9. Under the facts of the case as shown by the cross-bill, a court of equity can not be active in rescinding the contract of purchase, if there be defects in, or doubts resting on the title, but must leave the vendees to their legal rights. *Beck v. Simmons*, 7 Ala. 71; *Duncan v. Jeter*, 5 Ala. 604; *Lang v. Brown*, 4 Ala. 622; *Parks v. Brooks*, 16 Ala. 529; *Read v. Walker*, 18 Ala. 323 ; *Garner v. Leverett*, 32 Ala. 410.

We find no error in the decree of the chancellor, and it is affirmed.