# Linn *v.* McLean.

### *Bill in Equity to Enforce Vendor's Lien on Land.*

1. *Statute of frauds as to contracts for sale of land; acceptance by attorney.*—In a bill to enforce a vendor's lien, alleging that the defendant's election to purchase, under the option reserved to him by the contract, was manifested by a letter written by his attorney, it is not necessary to allege that the attorney had written authority to accept; and the averment that he was "duly authorized" not being denied, no question arises under the statute of frauds.

3. *Option to purchase; when contract of sale is complete.*—When one party offers to sell, and allows the other twelve months within which to elect whether he will purchase; if the latter elects to purchase within the given time, and gives notice of his election, the contract then becomes mutually obligatory, and a court of equity will decree specific performance in favor of either against the other; but, if the acceptance is conditional, or introduces an alteration or modification of the original proposal, the contract is not complete until the other party has signified his assent to the change. *the acceptance*

3. *Negotiations through the mails.*—When the parties reside in different places, and conduct their negotiations through the mails, an offer or acceptance can not be retracted after it has been posted; and where the vendor and the attorney of the non-resident purchaser, through whom the negotiations were conducted, were in the same city negotiating in person, a letter posted by the attorney on the last day allowed for an election, declaring his acceptance, binds his client from the time it is posted, although it may not bind the other party until received.

4. *Revocation of acceptance.*—A subsequent interview between the parties, on the day the letter was posted, can not be considered a revocation of the acceptance therein expressed, when the subject of the interview was a pending adverse suit for the land, and no allusion was made to the letter by either party.

5. *Execution of conveyance, and payment of purchase-money.*—A purchaser is not bound to accept a conveyance, the covenants of which are broken *eo instanti* on its execution; nor will he be compelled to accept a deed from his vendor, when an adverse claim to the land has been asserted, and the suit is still pending and undetermined.

6. *Bill to enforce vendor's lien, when conveyance has not been executed.* In a bill to enforce a vendor's lien, when no conveyance has been executed to the purchaser, and the payment of the purchase-money is to be contemporaneous with the execution of a conveyance, the complainant must allege that he is ready, willing and able to execute a good and sufficient deed; and if it appears that an adversary suit for the land is then pending and undetermined, the bill is prematurely filed.

7. *Bill in nature of specific performance; inquiry as to title.*—Though the vendor's bill, in such case, can not be maintained strictly and solely for the purpose of enforcing his lien on the land, it may be maintained as in the nature of a bill for specific performance, under which it is sufficient that he is able to make a good title at any time before final decree; and in granting specific performance, and compelling the purchaser to accept a conveyance, the court may hold the land bound for

[Linn v. McLean.]

the purchase-money, and order a sale on default of payment within a reasonable time; yet, the sufficiency of the title being denied, and not being conclusively established by a single judgment against the adverse claimant (Code, § 2969), an inquiry into the title should be first ordered and made, and the court should be satisfied as to its sufficiency.

APPEAL from the Chancery Court of Elmore.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 20th March, 1885, by William S. McLean, against J. J. Linn, and sought to enforce an alleged vendor's lien on land for the unpaid purchase-money. The tract of land contained about sixty acres, and was described as "the north half of the south-west quarter of section 31, township 18, range 17, except twenty acres taken off the east side of said land in a strip, whose western boundary shall be parallel with the said eastern line."

On the 13th February, 1884, the complainant sold to said Linn, and conveyed by deed, in which his wife joined, "all the ochre in, on or under the said tract of land, which said J. J. Linn shall mine or take out of the land, between now and the 1st day of January, 1887," together with the right to enter on and use the land, so far as might be necessary for the purpose of mining for the ochre, storing and removing it, and to erect suitable buildings. The consideration recited was the payment of $1,000 cash in hand, and the payment of a royalty of seventy-five cents per ton for all the ochre dug and removed; and the deed contained a stipulation in these words: "In consideration of the premises, we ·and each of us agree and bargain with said ·J. J. Linn, that he may, at any time within twelve months from the date hereof, purchase said sixty acres of land, ochre and other minerals, for the sum of $7,000, in addition to the said sum of $1,000 paid by said Linn· on the delivery of these presents; and on such payment being made, we bind ourselves, our heirs, executors and administrators, to make and deliver to said J. J. Linn a warranty deed in fee simple to the said lands." The deed contained, also, full covenants of warranty.

Linn entered on the land under this contract, and dug and removed ochre, and, as the bill alleged, "before the time limited by said contract [had expired], availed himself of the provision authorizing a purchase of said land at the price named, and notified complainant that he elected to purchase said land, as provided in said contract; which notification was in writing, and in words and figures as follows." The writing here set out in the bill is a letter signed by Chas. P. Jones, "as attorney for J. J. Linn," dated at Montgomery, Feb. 13th, 1885, addressed to the complainant, and in these words: "I desire to inform you that, under the contract between yourself

[Linn v. McLean.]

and Dr. J. J. Linn, on the 13th day of February, 1884, he takes the option of purchase, and is ready to comply whenever you give him a good title to the land, as your contract binds you to do. Your contract binds you to deliver to Dr. Linn a warranty deed in fee simple, and he looks to you for a performance of your contract, and expects compliance on your part." The bill alleged that, at the time this letter was written, "said Chas. P. Jones was the duly authorized attorney of said Linn to notify complainant of such election;" that complainant "accepted said election of purchase, and called on said Linn, soon after the receipt of said letter, and offered to execute the deed required, and demanded payment of said $7,000; that said Linn refused to pay the same, and informed complainant that he would not pay the same, even if your orator delivered to him the deed required in said notice; that afterwards, on the 25th February, 1885, notwithstanding said refusal by said Linn, complainant and his said wife executed a deed with full covenants of warranty, conveying said land in fee simple to said Linn, and tendered the same to him, through his said attorney, Chas. P. Jones, and demanded payment of said purchase price, $7,000; but said Jones, for said Linn, refused to pay said money, and said Linn still holds said lands," &c. On these averments, the bill prayed that a lien for the payment of said $7,000, with interest, be declared in favor of the complainant, and that the land be sold for the payment of the same.

The defendant filed an answer, in which was incorporated a demurrer, specifying as grounds of demurrer—1st, that "the bill shows defendant went into possession of the land under a lease, and not as a purchaser;" 2d, that the bill does not set forth a contract of purchase; 3d, that the letter of Jones "is not sufficient to bind either party as to the purchase or sale of said land, under the written contract set out;" 4th, that said letter "was not sufficient to bind complainant to convey said lands, nor to divest him of either the legal or equitable title thereto;" 5th, because said letter, "construed most strongly against this respondent, was a mere agreement to purchase, and not a purchase;" 6th, "because the bill makes no case for the enforcement of a vendor's lien, or for the specific performance of any contract enforceable in equity."

The material averments of the answer are contained in the following extracts: "Respondent admits that the third paragraph of the bill contains a correct copy of a letter from Chas. P. Jones, as attorney for this respondent, to said McLean, dated Feb. 13th, 1885. Respondent avers that said letter was written and deposited by said Jones in the post-office, at Montgomery, about 9 o'clock in the morning of Feb. 13th, 1885; that after the mailing of said letter, and before the said Mc-

[Linn v. McLean.]

Lean knew either of its existence or its contents, said Jones and C. O. Nash, the agent of this respondent, who had in his possession, as such agent, checks for the money to comply with said contract, met said. McLean at the office of J. M. Falkner, in the city of Montgomery, and had a conversation with him in regard to the purchase of said land; that said McLean was then and there informed that said Nash had the money, and was ready to purchase for this respondent, if said McLean would make him a good and sufficient title to said land, which should be satisfactory to his attorney, but that respondent would not purchase while the suit of Ellen M. Smith, which had been filed against said Nash and this respondent to recover forty acres of said land, was pending and undetermined; and respondent avers that said McLean was then asked to extend the option until the termination of the said suit, which he refused to do, and demanded that the money must be then paid, if respondent wanted to purchase, or the said contract would stand as it was without variation; and for this reason respondent would not pay said money, nor buy said lands. Respondent denies that said McLean ever acknowledged the receipt of said letter, and denies that said McLean, before or after he received said letter, ever called on him, or offered to execute any deed; and he denies that said. McLean ever demanded of him said $7,000, or had any conversation with him on the subject. Respondent avers that, on said 13th February, said McLean met C. O. Nash and said Chas. P. Jones, in the office of J. M. Falkner, in the city of Montgomery, and came to said Jones, with whom he had held a conversation on the day previous, and said he was ready to execute a deed, if the money was then paid; that he was then again informed that suit had been brought against respondent for a portion of the land, and that respondent, not being satisfied with the title offered, would not purchase unless McLean would give him some security to save him harmless against the pending suit. Said McLean then stated to said Jones, that the option in said contract expired that day, and that he would not execute any deed unless the money was paid that day; and he was then informed by said Jones, who at that time represented this respondent, that he could not advise respondent to purchase said lands in the state of the title at that time. Said McLean was informed in this, as in the former conversation, that unless he would extend the time in which respondent might purchase, he could not run the risk of the law suit, and would not buy the property. And respondent avers, that he never has, nor has any one for him, in any way signified his election of his right to purchase, and based his refusal to pay solely on the ground of the pending suit; but that he declined to purchase because he did not wish

[Linn v. McLean.]

to run the risk of a law-suit, and therefore did not pay the money because he declined to purchase. Said McLean well knew on said 13th February, 1885, that respondent never intended any purchase, and meant to remain in possession of said land, and has remained in possession since that time, claiming the right to do so under said lease, and has never set up any title in himself save as lessee."

The chancellor overruled the demurrer to the bill, and, on final hearing on pleadings and proof, rendered a decree for the complainant; and his decree is now assigned as error.

WATTS & SON, J. M. FALKNER, and C. P. JONES, for appellant.

GUNTER & BLAKEY, *contra.* (No briefs on file.)

CLOPTON, J.—The stipulation of the contract of February 13, 1884, giving appellant the right to purchase at any time within twelve months, may be regarded as an offer to sell, continuing and extending through the stipulated time; and, being supported by a sufficient consideration, it is not subject to revocation. If not accepted within the time limited, the proposal is withdrawn by its own limitation; but, though the agreement is unilateral, if accepted within the twelve months, it becomes mutually obligatory, and such as a court of equity will, in a proper case, enforce specific performance against either party, in favor of the other.— *Willard v. Tayloe,* 8 Wal. 557.

The bill is brought by appellee, to enforce a vendor's lien for the payment of the purchase-money. Whether or not there was a binding acceptance, is the main matter of contestation between the parties. The complainant claims, that the acceptance was made February 13, 1885, by a letter of that date written by the attorney of the defendant, a copy of which is set out in the bill. The letter substantially informs complainant that defendant takes the option to purchase, and is ready to comply whenever a good title to the land is made. The exercise of the option to purchase is express; compliance being conditioned on a good title being given.

It is urged in argument, that as the authority of the attorney is not shown to have been in writing, the defendant is not bound by the election. The bill alleges that the attorney was "duly authorized;" and as an averment that he was authorized *in writing* is not requisite, the question can not be raised by demurrer. The answer admits the writing and mailing of the letter, and the correctness of the copy contained in the bill; and states that the attorney represented the defendant in the negotiations then pending for an extension of time, in which

[Linn v. McLean.]

to exercise the option to purchase. The facts requisite to the defense of the statute of frauds are not alleged. The authority of the attorney is not put in issue; and the question is not properly presented for our decision.

It is further insisted that the election was revoked before the letter was received by complainant. The letter was posted at Montgomery, in the morning of the day on which it was written. Generally, posting a letter is not a delivery to the person to whom it is addressed. Actual receipt is necessary. The rule, that when the parties reside at different places, and, from considerations of convenience or necessity, negotiate by correspondence through the mails, neither the one making an offer, nor the party accepting, can retract after the acceptance is posted, does not apply. "The rule is restricted to cases where, by reason of general usage, or of the relation between the parties to any particular transaction, or of the terms in which the offer is made, the acceptance of such offer through the post is expressly or impliedly authorized."—1 Benj. on Sales, § 45; 1 Whar. Con. § 19. Though the defendant resided in Minnesota, it appears from the evidence that, from the date of the letter, until the 20th of March, with the exception of four or five days, he was in Montgomery or its vicinity, where both the attorney and complainant resided. Negotiations in person between the attorney and the complainant were had on the day preceding, and on the same day, subsequently to the mailing of the letter. There is neither express nor implied authority to accept through the mail. The defendant, however, having adopted such mode to exercise his option, and to notify complainant, must be held bound thereby, though it may not bind complainant unless and until the letter was actually received. But when received, the acceptance is complete on the part of defendant, unless it contains a modification or alteration of the terms of the offer, or something has intervened to defeat its operation.

There can be no question of the right of defendant to retract an uncommunicated acceptance; and it is contended that retraction was the necessary result of a subsequent interview on the same day. There were two personal interviews on the preceding day, when complainant was informed of the institution of the suit by Smith to recover possession of forty acres of the land, and that defendant was unwilling to run the risk of the suit. An extension of time in which to exercise the option was therefore requested. No definite answer to the request was then given; but, at the close of the second interview, complainant said, that he would inform them of his conclusion during the next day. On the next morning, without waiting for the information, the letter was written and posted. The

reasonable inference is, that, this being the last day of the twelve months, the defendant did not intend to suffer the time to expire without exercising the option, though an extension of time might be refused. We will not endeavor to reconcile the testimony of the various witnesses respecting what was said and done at the subsequent interview. Our conclusion from the whole evidence is, that the extension requested was refused; that complainant considering, as he construed the contract, that the execution and delivery of his warranty deed would be full performance, offered to execute it, and demanded the payment of the purchase-money; and that defendant, in view of the pending suit, refused to pay or take the property on the mere delivery of his deed, but was willing and ready to pay on a good title being made. It does not appear whether or not the complainant had received the letter at this time. No allusion whatever was made to it. If it was intended to recall it, the complainant should have been informed of its transmission through the post, that he might be advised of his relation to the transaction, and act understandingly. The election to purchase was suffered to continue in the course of delivery and to be received without notification of an intention to recall it. A refusal to pay on the execution and delivery of the mere deed of complainant, while the adverse suit is pending, is not irreconcilable with the acceptance of the offer, and a readiness to comply on receiving a good title. A retraction should be as direct and explicit as the acceptance. Under the circumstances, there could be no effective retraction of an election, of which the complainant was ignorant, by a conversation, which was not directed to, nor had in reference to such election as having been already made; but rather as to what would be performance of the contract on the part of complainant.

But the tenor and result of the conversation have a material bearing on the respective rights and duties of the parties. It manifested a disagreement as to a proper construction of the contract. If the only duty devolved on complainant by the contract is to execute and deliver a warranty deed, without reference to the title, an option to purchase, on condition that a good title is given, would be a change of the terms proposed; and before the contract of sale would be concluded, complainant must notify defendant of his assent to the modification or change. But such is not the construction of the contract. By the law, and under the terms of the offer, the defendant's right was to have such title, as will constitute him the owner of the land, clear of encumbrances—an indefeasible title. The court will not force on a purchaser a conveyance, the covenants of which are broken *eo-instanti* on its execution.—*Hunter v. O'Neil*, 12 Ala. 37; *Cullom v. Br. Bk. of Mobile*, 4 Ala. 21;

[Linn v. McLean.]

*Stone v. Fowle,* 22 Pick. 166; *Swan v. Drury, Ib.* 485. The acceptance, therefore, worked no modification or alteration in the terms of the offer, and the contract of sale was complete on the receipt of the letter by complainant without objection; a reasonable time being allowed to each party, in which to perform.

But, though the contract of sale is complete, the defendant can not be said to be in default, unless the complainant was ready, willing and able to give him such title as he was entitled to have. The contract of sale, as alleged in the bill, is founded on mutual and concurrent conditions. The execution of the deed, and the payment of the purchase-money, were to be cotemporaneous acts; each party being bound to perform at the same time; and neither bound to performance unless the other party was ready and able to perform his part of the contract. When "the contract of purchase is founded on mutual and concurrent conditions—when the payment of the purchase-money and the execution of the stipulated conveyance are intended to be concurrent and cotemporaneous acts, each party bound on his part to perform at the same time; the bill of the vendor so far partakes of the character of a bill for specific performance, that he must aver his readiness and ability to perform on his part at the appointed time, or the vendee is not placed in default."—*Burkett v. Munford,* 70 Ala. 423; *McKleroy v. Tulane,* 34 Ala. 78. In the case last cited, a decree was affirmed, sustaining a demurrer to a bill, brought to enforce a vendor's lien, on the ground that it did not allege a tender of such deeds as were called for by the contract. No future day for performance is fixed by the present contract. The election to purchase and notice must, in the nature of things, precede performance; and in such case performance in a reasonable time is allowed. The question then is, was the complainant ready and able to execute a title, on the delivery of which the defendant was bound to pay the purchase-money?

By assenting to the acceptance, on which the bill founds the right to relief, it is incumbent on complainant to be able and ready to make a good title, before performance by the defendant can be exacted. The answer alleges, and the fact is undisputed, that suit had been brought by an adverse claimant against the defendant and his agent, as tenants in possession, to recover two-thirds of the land in question. A purchaser will not be compelled to accept the deed of his vendor, when a suit is pending, in which an adverse claim is set up, until there has been a decision of the suit. He will not be forced to purchase a law-suit.—Waterman Spec. Per. § 412; *Earl v. Campbell,* 14 How. Pr. 330; *Doblis v. Norcross,* 24 N. J. Eq. 327. It appears that the suit has been determined against

[Linn v. McLean.]

the plaintiff therein, but at what time—whether before or since the filing of the bill—is not shown. If undetermined at the time the bill was filed, it can not be maintained strictly and for the single purpose of enforcing a vendor's lien ; as at the time it was brought, the complainant was not entitled to demand, and the defendant was not bound to pay the purchase-money —the claim had not matured.

But it may be regarded as a bill for specific performance, by compelling the vendee to accept a conveyance.—*Mumford v. Goree*, 70 Ala. 452. ' In such suit, it is sufficient if the vendor is able to make a good title at any time before a final decree. *Hepburn v. Auld*, 5 Cr. 262. When time is not an essential element of the contract, as when performance is not stipulated by a future limited day, actual tender of title, previous to the commencement of the suit, is not requisite. It suffices if the complainant is ready and willing, and offers in his pleadings to perform. Previous inability or neglect of tender will be considered as affecting only his right to costs. Though the defects in the title are not prominently put forward in the pleadings, the defendant is entitled to have an inquiry directed as to the title of a vendor of the lands in question.—Fry Spec. Per. § 824. Where the complainant is unable to comply when he commences his suit, the court, in the exercise of a sound and reasonable discretion, and as a condition precedent to granting specific performance, should require satisfactory assurance, that he is able to do all essential and material acts on his part to be done according to the terms of the contract.—3 Pom. Eq. Jur. § 1407. The title should be free from infirmity ; a title on which the purchaser may repose in peace and which assures the marketable value of the property.—*Connell v. Andrews*, 35 N. J. Eq. 7. The specific objection made in the pleadings is the pending suit, with an averment of ignorance of the facts and inability to ascertain them. The action pending when the bill was filed, was ejectment, or a statutory action in the nature of ejectment. Two judgments are requisite to bar a subsequent action founded on the same title. Code, § 2969. An adverse claim under a deed had been asserted by suit, the judgment in which is not conclusive of the claim ; and no exhibit of the title was made or offered. Under these circumstances it can hardly be said, that complainant's title is so free from doubt, or secure against litigation, as that the defendant should be compelled to accept it without further assurance. If the bill be considered a bill to enforce a vendor's lien, but partaking of the character of a bill for specific performance, so far as to require the complainant to offer a good title, the court should not have decreed a sale, as the defendant is paying full value, without first ascertaining that

[Dicks v. Belsher.]

the complainant was able to execute the offer, which he is required to make and does make in his bill, especially when objection to the title is made. If the suit be treated as one for specific performance, it should appear to the satisfaction of the court, by a reference of the title or otherwise, that the complainant is able on his own part to perform the contract according to its terms. Should specific performance be granted, the court may, in order to do complete justice, hold the land bound for the purchase-money, and decree a sale, if not paid in a reasonable time.—*Beverly v. Lawson*, 3 Mun. 317.

Reversed and remanded.